**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICANS FOR PROSPERITY FOUNDATION 4201 Wilson Boulevard, Suite 1000 Arlington, VA 22203, <br><br>       *Plaintiff*, <br><br>     v. <br><br> U.S. DEPARTMENT OF THE INTERIOR 1849 C Street, N.W. Washington, D.C. 20240; <br><br>       *Defendant*. | Civil Action No. 23-3241 |

## COMPLAINT

1.    Plaintiff Americans for Prosperity Foundation ("AFPF") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requesting access to agency records maintained by Defendant the United States Department of the Interior ("Interior") and its components.

2.    In September 2023, AFPF sent three related FOIA requests, one each to the Bureau of Land Management, the U.S. Fish & Wildlife Service, and Interior's Office of the Secretary, to request records concerning Interior's decision to cancel oil and gas leases in the Artic National Wildlife Refuge that were sold under mandate by federal statute.  AFPF also sent an earlier FOIA request in May 2022 to Interior's Office of the Secretary concerning Interior's decision to cancel the sale of oil and gas leases in the Gulf of Mexico and Alaska's Cook Inlet.

3.    None of the above three components of Interior to which AFPF sent these FOIA requests has issued a timely determination on the requests, nor has any one of them produced the

requested records, notwithstanding the urgency of the requests and the public importance of the records sought.

4.      Most of the records at issue concern the unprecedented actions by Interior to cancel oil and gas leases that were required by federal law and already sold.  All of the records sought concern the activity of the federal government that is ongoing and highly controversial and their disclosure is a matter of public exigency.

## JURISDICTION AND VENUE

5.      Jurisdiction is asserted pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

6.      Venue is proper pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

7.      Plaintiff AFPF is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society.  AFPF routinely files and litigates FOIA requests.  It relies on the legal, investigative, and editorial expertise of its staff to review the results of its requests and to produce distinct news and educational materials that are distributed to the interested public.

8.      Defendant Interior is an agency within the meaning of 5 U.S.C. § 552(f)(1).  Among its components are the Bureau of Land Management, the U.S. Fish & Wildlife Service, and the Office of the Secretary.  Interior and its components have possession, custody, and control of agency records to which AFPF seeks access and that are the subject of this Complaint.

## FACTS

I.    **Congress Directs Interior to Sell Oil and Gas Leases in the Coastal Plain**

9.      The "Coastal Plain" refers to an extensive oil and gas program area located in the far north of the Arctic National Wildlife Refuge in Alaska.  The Arctic National Wildlife Refuge

is administered primarily by the U.S. Fish and Wildlife Service.  *See* Congressional Research Service, *Arctic National Wildlife Refuge: Status of Oil and Gas Program* 1 (Sept. 14, 2023).

10.     In the Tax Cut and Jobs Act of 2017, Congress required the Secretary of the Interior, working through the Bureau of Land Management, to "establish and administer a competitive oil and gas program for the leasing, development, production, and transportation of oil and gas in and from the Coastal Plain."  Pub. L. 115-97, Dec. 22, 2017, 131 Stat. 2054, § 20001(b)(2)(A).

11.     Congress further directed the Secretary to "manage the oil and gas program on the Coastal Plain in a manner similar to the administration of lease sales under the Naval Petroleum Reserves Production Act of 1976 (42 U.S.C. 6501 *et seq*.) (including regulations)," *id.* § 20001(b)(3), and to "conduct not fewer than 2 lease sales area-wide under the oil and gas program under this section by not later than 10 years after the date of enactment of this Act." *Id.* § 20001(c)(1)(A).  The first of these two lease sales was to be completed within four years of the date of enactment, that is, by the end of 2021.  *Id.* § 20001(c)(1)(B)(ii)(I).

12.     Pursuant to this authority and mandate, the Bureau of Land Management published a "Notice of 2021 Coastal Plain Alaska Oil and Gas Lease Sale and Notice of Availability of the Detailed Statement of Sale" in the Federal Register on December 7, 2020.  85 Fed. Reg. 78865 (Dec. 7, 2020).  All bids were to be submitted by December 31, 2020, and the opening of the bids was set for January 6, 2021.  *Id.* at 78865–66.

13.     Following completion of this bid process, the Bureau of Land Management issued leases for nine tracts of land, covering almost 438,000 total acres. Congressional Research Service, *Arctic National Wildlife Refuge: Status of Oil and Gas Program* 1 (Sept. 14, 2023).

## II.      The Biden Administration Cancels the Leases

14.      President Biden issued Executive Order No. 13990 on the first day of his presidency.  Among other provisions, this executive order directed Interior to "place a temporary moratorium on all activities of the Federal Government relating to the implementation of the Coastal Plain Oil and Gas Leasing Program" and to conduct a new environmental impact analysis of the program.  Exec. Order No. 13990, § 4(a), 86 Fed. Reg. 7037, 7039 (Jan. 25, 2021).

15.      As a result of the order, the Bureau of Land Management suspended the awarded oil and gas leases in the Coastal Plain and initiated the preparation of a supplemental environmental impact statement.  On September 8, 2023, the Bureau of Land Management notified the public that it had completed a draft of that statement.  *Notice of Availability of the Draft Coastal Plain Oil and Gas Leasing Program Supplemental Environmental Impact Statement,* 88 Fed. Reg. 62104 (Sep. 8, 2023).

16.      Two days prior to the publication of that notice, on September 6, 2023, Interior announced that the Secretary of the Interior had decided to cancel all of the awarded oil and gas leases in the Coastal Plain that had been issued pursuant to the 2021 sale.  *See* Interior Press Release, *Biden-Harris Administration Takes Major Steps to Protect Arctic Lands and Wildlife in Alaska* (Sept. 6, 2023), *available at* https://www.doi.gov/pressreleases/biden-harris-administration-takes-major-steps-protect-arctic-lands-and-wildlife-alaska.

## III.     AFPF's September 13, 2023 FOIA Request to the Bureau of Land Management

17.      By letter, dated September 13, 2023, AFPF submitted a FOIA request via the FOIAXpress PAL to the Bureau of Land Management seeking access to the following records:

> All internal and external communications (e-mail, text, instant messaging, etc.) sent to or by the following Interior employees, including through any alias accounts:

> 1.      Director Tracy Stone-Manning

    2.      Principal Deputy Director Nada Wolff Culver
    3.      Deputy Director Michael D. Nedd
    4.      Assistant Director of Communications Jeff Krauss
    5.      Acting Assistant Director for Energy, Minerals, and Realty Management Ben Gruber
    6.      Alaska State Director Steve Cohn

**Exhibit 1**.

18.    AFPF clarified it did not seek "daily news clippings or other mass mailings unless there is commentary related to them" and that the agency could omit such records from the scope of the request. *Id.*

19.    AFPF further limited the scope of its request by asking the agency to limit its "search and processing of records for the foregoing custodians to those records containing any of the following sets of keywords:

> ("Arctic National Wildlife Refuge" OR "ANWR" OR "Coastal Plain") AND ("lease sale" OR "cancel" OR "cancellation")
>
> (Arctic National Wildlife Refuge" OR "ANWR" OR "Coastal Plain") AND ("NEPA" OR "National Environmental Policy Act")
>
> "Tax Cuts and Jobs Act" OR "TCJA" OR "Tax Act" OR "PL 115-97" OR "Public Law 115-97"

*Id.*

20.    AFPF identified the relevant time period for this request as "March 1, 2023 to the present," and it defined the term "present" as "the date on which the . . . [agency] begins its search for responsive records." *Id.*

21.    AFPF also defined the term "record" for purposes of the request as "any medium of information storage in the form and format maintained by the agency at the time of the request." *Id.* AFPF clarified that "[i]f the agency considers a medium of information storage to contain multiple records that it believes can be segmented on the basis of the subject-matter or scope of AFPF's request, AFPF explicitly seeks access to those separate 'records' as well. They should not be treated as 'non-responsive.'" *Id.*

22.    AFPF likewise explained that the agency "should process the record in its entirety without any further segmentation or subject-matter scoping" should any portion of a record be found to be potentially responsive to the request.  *Id.*

23.    Given the urgency and importance of the requested records, AFPF asked that its request be given expedited processing.  *Id.*  AFPF pointed to the fact that the actions "to cancel lease sales required by federal law" was "unprecedented" and that "[d]elay in the production of records responsive to this request would compromise a significant and recognized public interest in government accountability."  *Id.*

24.    AFPF requested a public interest fee waiver and classification as a representative of the news media for fee purposes.  *Id.*

25.    By two emails, both dated September 13, 2023, Interior's FOIA department acknowledged it had received AFPF's request on September 13, 2023, and had assigned it tracking number DOI-BLM-2023-05780.  **Exhibit 2**.

26.    By email, dated September 22, 2023, Interior's FOIA department informed AFPF that it had updated the status of AFPF's request to "Assigned for Processing."  **Exhibit 3.**

27.    To date, the agency has failed to provide any further update on the processing of AFPF's request.  It has neither issued a determination nor produced responsive records.

28.    Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), the date by which the agency should have made a final determination on AFPF's request to the Bureau of Land Management was October 12, 2023.

**IV.    AFPF's September 13, 2023 FOIA Request to the U.S. Fish & Wildlife Service**

29.    By letter, dated September 13, 2023, AFPF submitted a FOIA request via the FOIAXpress PAL to the U.S. Fish & Wildlife Service seeking access to the following records:

6

All internal and external communications (e-mail, text, instant messaging, etc.) sent to or by the following Interior employees, including through any alias accounts:

  1.   Director Martha Williams
  2.   Chief of National Wildlife Refuge System Cynthia Martinez
  3.   Regional Director, Alaska, Sara Boario

**Exhibit 4**.

30.     AFPF clarified it did not seek "daily news clippings or other mass mailings unless there is commentary related to them" and that the agency could omit such records from the scope of the request.  *Id.*

31.     AFPF further limited the scope of its request by asking the agency to limit its "search and processing of records for the foregoing custodians to those records containing any of the following sets of keywords:

> ("Arctic National Wildlife Refuge" OR "ANWR" OR "Coastal Plain") AND ("lease sale" OR "cancel" OR "cancellation")
>
> (Arctic National Wildlife Refuge" OR "ANWR" OR "Coastal Plain") AND ("NEPA" OR "National Environmental Policy Act")
>
> "Tax Cuts and Jobs Act" OR "TCJA" OR "Tax Act" OR "PL 115-97" OR "Public Law 115-97"

*Id.*

32.     AFPF identified the relevant time period for this request as "March 1, 2023 to the present," and it defined the term "present" as "the date on which the . . . [agency] begins its search for responsive records."  *Id.*

33.     AFPF also defined the term "record" for purposes of the request as "any medium of information storage in the form and format maintained by the agency at the time of the request."  *Id.*  AFPF clarified that "[i]f the agency considers a medium of information storage to contain multiple records that it believes can be segmented on the basis of the subject-matter or scope of AFPF's request, AFPF explicitly seeks access to those separate 'records' as well.  They should not be treated as 'non-responsive.'"  *Id.*

34.     AFPF likewise explained that the agency "should process the record in its entirety without any further segmentation or subject-matter scoping" should any portion of a record be found to be potentially responsive to the request.  *Id.*

35.     Given the urgency and importance of the requested records, AFPF asked that its request be given expedited processing.  *Id.*  AFPF pointed to the fact that the actions "to cancel lease sales required by federal law" was "unprecedented" and that "[d]elay in the production of records responsive to this request would compromise a significant and recognized public interest in government accountability."  *Id.*

36.     AFPF requested a public interest fee waiver and classification as a representative of the news media for fee purposes.  *Id.*

37.     By two emails, both dated September 13, 2023, Interior's FOIA department acknowledged it had received AFPF's request on September 13, 2023, and had assigned it tracking number DOI-FWS-2023-005884.  **Exhibit 5**.

38.     By letter, dated September 27, 2023, the U.S. Fish & Wildlife Service again acknowledged it had received AFPF's request,[1] informed AFPF that it had denied AFPF's request for expedited processing, and granted AFPF's request to be classified as a representative of the news media.  **Exhibit 6**.  This acknowledgement letter made no determination on AFPF's request for a public interest fee waiver, stating that "[s]ince we do not anticipate any duplication cost or the duplication cost would be less than $50, there is no need to address your fee waiver request."  *Id.*

---

[1] This acknowledgement letter provided an improper date for the request and referenced the wrong tracking number.  Nevertheless, it properly identified the requested records.  For purposes of this Complaint, AFPF relies on the two acknowledgement emails sent to AFPF on September 13, 2023, for the date the U.S. Fish & Wildlife Service received the request and for the proper tracking number.

39.     To date, the agency has failed to provide any further update on the processing of AFPF's request.  It has neither issued a determination nor produced responsive records.

40.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), the date by which the agency should have made a final determination on AFPF's request to the U.S. Fish & Wildlife Service was October 12, 2023.

## V.     AFPF's September 13, 2023 FOIA Request to Interior's Office of the Secretary

41.     By letter, dated September 13, 2023, AFPF submitted a FOIA request via the FOIAXpress PAL to Interior's Office of the Secretary seeking access to the following records:

> All internal and external communications (e-mail, text, instant messaging, etc.) sent to or by the following Interior employees, including through any alias accounts:
>
> 1.     Secretary Deb Haaland
> 2.     Chief of Staff Rachael Taylor
> 3.     Deputy Chief of Staff – Policy Kate Kelly
> 4.     Director of Communications Melissa Schwartz
> 5.     Senior Advisor for Alaska Affairs and Strategic Priorities Raina Thiele
> 6.     Senior Counselor to the Secretary Elizabeth (Liz) Klein

**Exhibit 7**.

42.     AFPF clarified it did not seek "daily news clippings or other mass mailings unless there is commentary related to them" and that the agency could omit such records from the scope of the request.  *Id.*

43.     AFPF further limited the scope of its request by asking the agency to limit its "search and processing of records for the foregoing custodians to those records containing any of the following sets of keywords:

> ("Arctic National Wildlife Refuge" OR "ANWR" OR "Coastal Plain") AND ("lease sale" OR "cancel" OR "cancellation")
>
> (Arctic National Wildlife Refuge" OR "ANWR" OR "Coastal Plain") AND ("NEPA" OR "National Environmental Policy Act")
>
> "Tax Cuts and Jobs Act" OR "TCJA" OR "Tax Act" OR "PL 115-97" OR "Public Law 115-97"

*Id.*

44.     AFPF identified the relevant time period for this request as "March 1, 2023 to the present," and it defined the term "present" as "the date on which the . . . [agency] begins its search for responsive records."  *Id.*

45.     AFPF also defined the term "record" for purposes of the request as "any medium of information storage in the form and format maintained by the agency at the time of the request."  *Id.*  AFPF clarified that "[i]f the agency considers a medium of information storage to contain multiple records that it believes can be segmented on the basis of the subject-matter or scope of AFPF's request, AFPF explicitly seeks access to those separate 'records' as well.  They should not be treated as 'non-responsive.'"  *Id.*

46.     AFPF likewise explained that the agency "should process the record in its entirety without any further segmentation or subject-matter scoping" should any portion of a record be found to be potentially responsive to the request.  *Id.*

47.     Given the urgency and importance of the requested records, AFPF asked that its request be given expedited processing.  *Id.*  AFPF pointed to the fact that Interior's actions "to cancel lease sales required by federal law" was "unprecedented" and that "[d]elay in the production of records responsive to this request would compromise a significant and recognized public interest in government accountability."  *Id.*

48.     AFPF requested a public interest fee waiver and classification as a representative of the news media for fee purposes.  *Id.*

49.     By two emails, both dated September 13, 2023, Interior's FOIA department acknowledged it had received AFPF's request on September 13, 2023, and had assigned it tracking number DOI-OS-2023-005813.  **Exhibit 8.**

50.     By letter, dated September 22, 2023, Interior's Office of the Secretary again acknowledged it had received AFPF's request on September 13, 2023, denied AFPF's request for expedited processing, granted AFPF's request to be classified as a representative of the news media, and concluded that "[b]ecause of your entitlements, we do not anticipate there will be billable fees for processing your request, so there is no need for us to address your request for a fee waiver." **Exhibit 9.**

51.     This acknowledgement letter also invoked a 10-day extension for processing the request, stating that "we are taking a 10-workday extension under 43 C.F.R. § 2.19" because "we will need to search for and collect requested records from field facilities or other units that are separate from the office processing the request." *Id.*

52.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), together with the 10-day extension, the date by which the agency should have made a final determination on AFPF's request to Interior's Office of the Secretary was October 26, 2023.

53.     To date, the agency has failed to provide any further update on the processing of AFPF's request.  It has neither issued a determination nor produced responsive records.

**VI.     AFPF's May 13, 2022 FOIA Request to Interior's Office of the Secretary**

54.     In May 2022, Interior announced it had cancelled a planned sale of oil and gas leases in program areas in both Alaska and the Gulf of Mexico.  *See* Breanne Deppisch, *Interior cancels oil and gas lease sales in Alaska and Gulf of Mexico*, WASH. EXAM'R, (May 12, 2022), https://www.washingtonexaminer.com/restoring-america/courage-strength-optimism/interior-cancels-oil-and-gas-lease-sales-in-alaska-and-gulf-of-mexico.

55.     By letter, dated May 13, 2022, AFPF submitted a FOIA request via FOIAOnline to Interior's Office of the Secretary seeking access to the following records:

1. All records memorializing the decision to cancel lease sales in the Gulf of Mexico and Alaska's Cook Inlet including, but not limited to, memoranda, supporting studies, or data sets.

2 All internal and external communications (e-mail, text, instant messaging, etc.) sent to or by the following Interior employees, including through any alias accounts, regarding the cancellation of lease sales in Alaska and the Gulf of Mexico:

   a. Secretary Deb Haaland
   b. Chief of Staff Rachael Taylor
   c. Deputy Chief of Staff – Policy Kate Kelly
   d. Director of Communications Melissa Schwartz
   e. Senior Advisor for Alaska Affairs and Strategic Priorities Raina Thiele
   f. Senior Counselor to the Secretary Elizabeth (Liz) Klein
   g. White House Liaison Maggie Thompson
   h. Bureau of Ocean Energy Management ("BOEM") Director Amanda Lefton
   i. BOEM Deputy Director Walter Cruickshank
   j. BOEM Alaska Regional Director James Kendall
   k. BOEM Gulf of Mexico Regional Director Michael Celata

3 All internal and external communications (e-mail, text, instant messaging, etc.) sent to or by the Interior employees identified in Item 2, including through any alias accounts, regarding Interior's development of a new five-year offshore drilling plan.

4. All communications (e-mail, text, instant messaging, etc.) between the Interior employees identified in Item 2, including through any alias accounts, with the White House, including but not limited to members of the White House Office of Domestic Climate Policy (Climate Policy Office), National Climate Advisor Gina McCarthy, and Deputy National Climate Advisor Ali Zaidi regarding the cancellation of lease sales in Alaska and the Gulf of Mexico.

**Exhibit 10**.

56.     AFPF clarified it did not seek "daily news clippings or other mass mailings unless there is commentary related to them" and that the agency could omit such records from the scope of the request.  *Id.*

57.     AFPF also clarified that "[f]or all items of this request, if the agency uncovers responsive e-mail records, AFPF's request specifically seeks the entirety of any e-mail chain, any portion of which contains an individual e-mail message responsive to this request, *i.e.*, the entire e-mail chain is responsive to this request.  If the agency identifies responsive records it deems

outside its legal control (*e.g.*, congressional records), AFPF requests the agency inform AFPF that such records exist." *Id.*

58.     AFPF defined the term "record" for purposes of the request as "any medium of information storage in the form and format maintained by the agency at the time of the request." *Id.* AFPF clarified that "[i]f any portion of a 'record,' so defined, is responsive to AFPF's request, then the agency should process and disclose the record in its entirety.  If the agency considers a medium of information storage to contain multiple records that it believes can be segmented on the basis of the subject-matter or scope of AFPF's request, AFPF explicitly seeks access to those separate 'records' as well.  They should not be treated as 'non-responsive.'" *Id.*

59.     AFPF requested a public interest fee waiver and classification as a representative of the news media for fee purposes. *Id.*

60.     By email, dated May 13, 2022, the administrator of FOIAOnline acknowledged it had received AFPF's request on May 13, 2022 and had assigned it tracking number DOI-OS-2022-003693. **Exhibit 11.**

61.     By email, dated May 16, 2022, the administrator of FOIAOnline explained that AFPF's few waiver request was "determined to be not applicable as the request is not billable." **Exhibit 12**.

62.     By letter, dated June 2, 2022, Interior's Office of the Secretary acknowledged it had received AFPF's request,[2] granted AFPF's request to be classified as a representative of the

---

[2] This acknowledgement letter provided an improper date for the request and a different date it was received by the agency as compared to the first acknowledgement email received from the administrator of FOIAOnline.  For purposes of this Complaint, AFPF relies on the latter email acknowledgement for the date the request was received by the agency.

news media, and deferred determining AFPF's public interest fee waiver request because "we do not anticipate that there will be a billable fee for the processing of this request." **Exhibit 13**.

63.     In contradiction to May 16, 2022 email and possible contradiction to the above statement concerning processing fees, the June 2, 2022 acknowledgement letter stated that, if photocopying costs exceeded a certain threshold, "we may charge you for some of our duplication costs." *Id.*

64.     The June 2, 2022, acknowledgement letter also invoked a 10-day extension for processing the request, stating that "we are taking a 10-workday extension under 43 C.F.R. § 2.19" because "we will need to search for and collect requested records from field facilities or other units that are separate from the office processing the request." *Id.*

65.     For certain items of the FOIA request, namely, items 2(h)–2(k), the June 2, 2022, acknowledgement letter suggested that AFPF redirect its request to the Bureau of Ocean Energy Management as the Interior component most likely to be the custodian of such records. *Id.* As requested, AFPF redirected those specific request items to the Bureau of Ocean Energy Management and received the requested records. Items 2(h)–2(k) of the May 13, 2022 FOIA request accordingly are not within the scope of this Complaint.

66.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), together with the 10-day extension, the date by which the agency should have made a final determination on AFPF's request to Interior's Office of the Secretary was June 24, 2022.

67.     To date, the agency has failed to provide any further update on the processing of AFPF's request. It has neither issued a determination nor produced responsive records.

## <u>COUNT I</u>
### <u>Violation of the FOIA: Failure to Comply with Statutory Requirements</u>

68.     AFPF repeats all of the above paragraphs.

69.     The FOIA requires an agency to accept and process any request for access to agency records that (a) "reasonably describes such records," and (b) "is made in accordance with published rules stating the time, place, fees, . . . and procedures to be followed[.]"  5 U.S.C. § 552(a)(3)(A).

70.     The FOIA also requires an agency to respond to a valid request within 20 business days or, in "unusual circumstances," within 30 business days.  *Id.* § 552(a)(6)(A)–(B).  If an agency requires additional time to process a request, the FOIA mandates it provide the requester with "an opportunity to arrange . . . an alternative time frame for processing the request[.]"  *Id.* § 552(a)(6)(B)(ii); *see* 43 C.F.R. §§ 2.16, 2.19.

71.     The "receipt" of a FOIA request triggers an agency's obligation to respond and therefore starts the countdown for all relevant statutory deadlines.  5 U.S.C. § 552(a)(6)(A)(i); *see, e.g.*, *McGehee v. Cent. Intelligence Agency*, 697 F.2d 1095, 1110 (D.C. Cir. 1983) ("[W]hen an agency receives a FOIA request . . . it must take responsibility for processing the request."); *see also* 43 C.F.R. § 2.16(a).

72.     AFPF's FOIA requests seek access to agency records maintained by the Bureau of Land Management, the U.S. Fish & Wildlife Service, and Interior's Office of the Secretary.  The requests reasonably describe the records sought and comply with the FOIA and applicable agency regulations.  They were properly submitted to and received by the Bureau of Land Management, the U.S. Fish & Wildlife Service, and Interior's Office of the Secretary.

73.     The Bureau of Land Management and the U.S. Fish & Wildlife Service received AFPF's valid requests on September 13, 2023.  Determinations on these requests were due October 12, 2023.

74.     Interior's Office of the Secretary received AFPF's valid requests on May 13, 2022, and September 13, 2023.  Determinations on these requests were due June 24, 2022, and October 26, 2023, respectively.

75.     Neither the Bureau of Land Management, the U.S. Fish & Wildlife Service, nor Interior's Office of the Secretary has issued a determination on or produced agency records responsive to AFPF's requests within the applicable statutory time limits.

76.     AFPF is irreparably harmed by the violation of the FOIA by the Bureau of Land Management, the U.S. Fish & Wildlife Service, and Interior's Office of the Secretary and their unlawful withholding of responsive agency records to which AFPF is statutorily entitled.

77.     AFPF will continue to be irreparably harmed until such time as the Bureau of Land Management, the U.S. Fish & Wildlife Service, and Interior's Office of the Secretary are compelled to satisfy their obligations under the FOIA.

78.     AFPF has exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C).

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff AFPF respectfully requests and prays that this Court:

a.     Order the Bureau of Land Management, the U.S. Fish & Wildlife Service, and Interior's Office of the Secretary to process AFPF's FOIA requests and issue determinations upon the issuance of the Order;

b.     Order the Bureau of Land Management, the U.S. Fish & Wildlife Service, and Interior's Office of the Secretary promptly to produce all non-exempt agency records responsive to AFPF's FOIA requests;

c.      Maintain jurisdiction over this case until the Bureau of Land Management, the U.S. Fish & Wildlife Service, and Interior's Office of the Secretary comply with the Order and, if applicable, adequately justify their treatment of all relevant records;

d.      Award AFPF its costs and reasonable attorney fees incurred here pursuant to 5 U.S.C. § 552(a)(4)(E); and

e.      Grant such other relief as the Court may deem just and proper.


Dated: October 31, 2023                              Respectfully submitted,

                                                     */s/ Lee A. Steven*
                                                     Lee A. Steven
                                                     D.C. Bar No. 468543
                                                     Ryan P. Mulvey
                                                     D.C. Bar No. 1024362

                                                     AMERICANS FOR PROSPERITY FOUNDATION
                                                     4201 Wilson Boulevard, Suite 1000
                                                     Arlington, VA 22203
                                                     Telephone: (571) 329-1716
                                                     lsteven@afphq.org
                                                     rmulvey@afphq.org

                                                     *Counsel for Plaintiff*